# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia


FILED
May 26 2022
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. ____91____
)
)
)

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ❏ evidence of a crime;
- ❏ contraband, fruits of crime, or other items illegally possessed;
- ❏ property designed for use, intended for use, or used in committing a crime;
- ❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

*Code Section*      *Offense Description*

The application is based on these facts:

- ❏ Continued on the attached sheet.
- ❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ Rashaun Boland*
Applicant's signature

Reviewed by AUSA/SAUSA

_____       _____
*Printed name and title*      *Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ *(specify reliable electronic means)*.

Date: May 26, 2022      /s/ MRC
*Judge's signature*

City and state: _____      _____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
*Richmond Division*

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (804)-431-4281, THAT IS STORED AT PREMISES CONTROLLED BY Verizon Wireless | Case No. 3:22-SW-91<br>**Filed Under Seal** |



FILED
May 26 2022
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, **Rashaun Boland**, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number 804-431-4281, ("the SUBJECT PHONE"), that is stored at premises controlled by **Verizon Wireless**, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **Verizon Wireless** to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Task Force Officer with Drug Enforcement Administration (DEA) and have been since October 2020. My law enforcement and legal training consists of the Basic Law Enforcement Academy that I attended at Crater Criminal Justice Academy located in Disputanta VA.

3. With my training knowledge and experience, I have discovered that firearms and narcotics traffickers utilize social media through the use of mobile devices to contact other individuals regarding their crimes, the selling and potential selling of firearms and narcotics. Such platforms of social media include, but are not limited to, Facebook, Twitter and Instagram. I have come to understand that individuals use multiple platforms to access social media which include but are not limited to: cell phones, tablets, personal computers and video gaming consoles. I have come to understand that many individual's use social media to contact others regarding crimes they have committed and/or crimes that they plan to commit.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other TFO's, agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C §§ 841(a)(1), 846, namely Distribution of and Possession with Intent to Distribute Controlled Substances as well as Conspiracy to do so have been committed, are being committed, and will be committed by **Jeffrey FISHER**. There is also probable cause to search the information described in Attachment A for evidence, contraband, and fruits of these crimes as further described in Attachment B.

## PROBABLE CAUSE

6. Your affiant reviewed jail calls being placed from Riverside Regional Jail by various inmates calling phone number 804-295-1180 between the dates of June 2021- October 2021. Your affiant heard numerous incarcerated individuals refer to the person they called at 804-295-1180 as "Quan." Your affiant knows "Quan" to be the nickname/street name for Jaquan

Fisher ("Jaquan Fisher" or "Quan").  Your Affiant recognized the voice associated with phone number 804-295-1180 as Jaquan Fisher's.

7. Jeffrey Fisher ("Jeffrey Fisher"), the older brother of Jaquan Fisher, was arrested on October 16, 2021.  Your affiant reviewed jail recordings of calls made by Jeffrey Fisher that were placed between October 16 and 17, 2021 at Riverside Regional Jail.  These calls were made to phone number 804-943-4969 and Jeffrey Fisher made contact with his child's mother Drema Crenshaw ("Drema Crenshaw").  Crenshaw then contacted Jaquan Fisher referring to him as "Quan" on a 3-way phone call.  While on the 3-way phone call, Jeffrey Fisher advised Drema Crenshaw and Jaquan Fisher, referring to them as "Drema" and "Quan," respectively,  "yall gone have to handle everything" and "yall gone have to open that joint up today."  Based on your affiant's training and experience and context of the broader discussion, Jeffrey Fisher was likely referring to narcotics.  Jeffrey Fisher advised both Drema Crenshaw and Jaquan Fisher to collect owed money from multiple subjects in the city that totaled more than 3 thousand dollars.  Jeffrey Fisher advised that he had approximately $600 on his Cashapp and $12-13,000 dollars at his mama house—Jeffrey Fisher's mother is Debra Fisher who resides at 839 Rome Street Petersburg, Virginia 23803 (the "Residence").

8. Jeffrey Fisher advised Drema Crenshaw "when she whip it up do it one at a time, put 28 on 14."  Based on your affiant's training and experience, this method of putting 28 on 14 is used by drug distributors to expand the quantity of narcotics and by extension their profit.  Jeffrey Fisher on multiple occasions asked whether Drema Crenshaw and Jaquan Fisher spoke to "Sosa."  Your affiant believes "Sosa" is Arthur Monroe who is a convicted narcotics trafficker and believed to currently engaging in narcotics trafficking.  Further, Monroe is believed to be the source of supply for Jeffrey Fisher.  Moreover, several reliable confidential informants advised

3

your Affiant that "Sosa" utilized Jeffrey Fisher and Jaquan Fisher to ensure his safety after several robberies.

9. In a call on October 17, 2021, Jeffrey Fisher, still incarcerated Riverside Regional Jail, called Drema Crenshaw at phone number 804-943-4969. During that call, Drema Crensahw advised Jeffrey Fisher that she "messed up a batch and she would replace it." During this same conversation, Jaquan Fisher joined the call and advised that "Sosa" was in the kitchen at the Residence cooking up a batch during the jail call.

10. On October 20, 2021, Petersburg Police with the assistance of the Drug Enforcement Administration ("DEA") executed a narcotics search warrant at the residence of 839 Rome Street Petersburg, Virginia 23803 (the "Residence"). Based on surveillance of and familiarity with the Residence, Jaquan Fisher resides at the Residence along with his mother, Debra Fisher. Jeffrey Fisher also resided at the Residence prior to his arrest several days before the execution of the search warrant at the Residence. During a search of the Residence, law enforcement recovered larges amount of cocaine, methamphetamine, marijuana, handguns, rifles, and United States currency. The suspected narcotics were submitted to the Virginia Department of Forensic Science and determined to be approximately 619 grams of methamphetamine, 640 grams of cocaine, and 90 grams of marijuana. Several firearms were also recovered from a room believed to belong to Debra Fisher, specifically (1) a SCCY, Model CPX-2, 9mm semiautomatic pistol, bearing serial number C167674; (2) a Cobra, Model CB9, semiautomatic pistol, bearing serial number CT109546. Inside the living room another firearm was recovered a (1) a Smith & Wesson, Model SD40 VE, semiautomatic pistol, bearing serial number FYD9777.

11. When law enforcement entered the residence Jaquan Fisher was seated in a stairwell within several feet of both a DRACO 7.62 caliber semi-automatic rifle, bearing serial number DF-

1543-19 as well as a lunchbox filled with approximately 85 grams of cocaine and 2.6 grams of methamphetamine.

12. The SUBJECT PHONE was seized by Petersburg law enforcement from Jeffrey Fisher during his arrest.  Further, the SUBJECT PHONE number was corroborated by a reliable confidential source.  Given Jeffrey Fisher connection to the SUBJECT PHONE around the time of suspected narcotics trafficking activity at the RESIDENCE, specifically connection to the narcotics remaining in the RESIDENCE subsequent to his arrest the information sought under this search warrant, particularly cell-site information, will, among other things, corroborate and confirm Jeffrey Fisher's knowledge of the narcotics recovered on October 20, 2021 at the RESIDENCE.

13. In my training and experience, I have learned that **Verizon Wireless** is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

14. Based on my training and experience, I know that **Verizon Wireless** can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as **Verizon Wireless** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

15. Based on my training and experience, I know that wireless providers such as **Verizon Wireless** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as **Verizon Wireless** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

16. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

17. I further request that the Court direct **Verizon Wireless** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on **Verizon Wireless**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the

execution of the requested warrant at any time in the day or night.

                                              Respectfully submitted,

                                              *Rashaun Boland*
                                              Rashaun Boland
                                              Task Force Officer
                                              DEA

Subscribed and sworn to before me on         May 26   , 2022

          /s/ MRC
The Honorable Mark R. Colombell
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number **(804)-431-4281**, ("the Account"), that is stored at premises controlled by **Verizon Wireless** ("the Provider"), headquartered 180 Washington Valley Road, Bedminster, NJ 07921.

## ATTACHMENT B

### Particular Things to be seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of March 20, 2021 through October 20, 2021:

a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Subscriber personal identification, to include name, document control numbers, date of birth, photo, or any other type of identification documentation presented by the parties opening or in control of the accounts;

   iv. All device information identifying the specific cellular phone, tablet etc. related to this phone number **(804)-431-4281** and account, to include IMSI, IMEI, MEID, and ESN

   v. Local and long distance telephone connection records;

   vi. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   vii. Length of service (including start date and closing date (if any)) and types of service utilized;

2

      viii. Physical address where wireless telephone contract was initiated, or the contract was initiated;

      ix. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

      x. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      xi. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses (data sessions); and

      ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received for both call detail records and any data sessions.

c. Any and all specialized location data referred to by different phone companies as Per Call Measurement Data (PCMD), Real Time Tool data (RTT), Network Element Location Service data (NELOS) and/or Timing Advance or True Call data, to include estimated locations of the device based on cellular measurements on all networks to include 2G, 3G, 4G, and/or 5G networks.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C §§ 841(a)(1), 846, namely Distribution of and Possession with Intent to Distribute Controlled Substances as well as Conspiracy during the period of March 20, 2021 through October 20, 2021.